Affirmed in Part and Reversed and Remanded in Part and Opinion filed
September 26, 2006








Affirmed
in Part and Reversed and Remanded in Part and Opinion filed September 26, 2006.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-01254-CV

____________

 

CONCERNED COMMUNITY INVOLVED
DEVELOPMENT, INC., Appellant

 

V.

 

CITY OF HOUSTON, CANDLELIGHT
DEVELOPMENT JOINT VENTURE, CANDEV, L.C., CANDLELIGHT PLACE DEVELOPMENT, L.L.C.,
and LAZER CONSTRUCTION COMPANY, INC., Appellees

 



 

On Appeal from the 281st
District Court

Harris County, Texas

Trial Court Cause No. 05-66589

 



 

O P I N I O N








Concerned Community Involved Development, Inc. (ACCID@) sought a
temporary and permanent injunction against the City of Houston (Athe City@), Candlelight
Development Joint Venture, and various other real estate development and
construction entities (referred to collectively as ACandlelight@) to prevent the
construction of a bridge.  The City filed a plea to the jurisdiction.  The
trial court conducted separate hearings on (1) CCID=s request for
injunctive relief and (2) the City=s plea to the jurisdiction. 
In a single order, the trial court denied CCID=s request for
injunctive relief and granted the City=s plea to the
jurisdiction.  In two points of error, CCID contends the trial court erred in
(1) overruling its due process claims by denying injunctive relief and (2)
granting the City=s plea to the jurisdiction.  We affirm, in
part, and reverse and remand, in part.

Background Facts

Candlelight Estates is a residential subdivision in Houston=s northwest
quadrant.  The northern boundary of sections 1 and 2 of the subdivision is
marked by a Harris County Flood Control District (the ADistrict@) drainage ditch. 
Rosslyn Road runs through northwest Houston in a generally north-south
direction, but for want of a bridge, there is no through traffic across the
drainage ditch.  Accordingly, the road dead ends on both sides of the ditch.

Candlelight sought to facilitate the development of its
property north of the ditch by constructing a bridge across the drainage ditch
on Rosslyn Road.  Candlelight sought approval from the District, and, in 2001,
the District approved Candlelight=s request to
construct a bridge across the ditch.  City of Houston v. Grudziecke, No.
14‑02‑00947‑CV, 2003 WL 1922671, at *1 (Tex. App.CHouston [14th
Dist.] Apr. 24, 2003, no pet.) (mem. op.).  However, the proposed construction
provoked opposition from citizens living in sections 1 and 2 of Candlelight
Estates.  Nevertheless, the City of Houston issued a permit for construction of
the bridge.  Id.  Homeowners in the area sought an injunction in the
157th District Court against the City, Candlelight, and others to prohibit the
construction of the bridge, contending that such construction constituted
trespass and nuisance, violated section 11.086 of the Texas Water Code, and was
an unconstitutional taking of their property.  Id.








The City filed a plea to the jurisdiction contending the
district court lacked subject matter jurisdiction because the homeowners did
not suffer a taking under the Texas Constitution and, thus, suffered no
injury.  Id. at *4.  We held the trial court had no subject matter
jurisdiction because claims of inverse condemnation must be filed in the county
court.  Id. at *5.  For reasons that are not entirely clear in our
record, Candlelight subsequently abandoned its plan to build the bridge as
designed.  The original plan called for the bridge to be built on box
culverts.  Thereafter, Candlelight sought to build a Aspan@ bridge across
ditch, apparently necessitating an application for a new permit.

In March 2004, Candlelight submitted to the City its plans
to construct paving and drainage facilities in conjunction with the
installation of the Rossyln Road bridge.  On October 11, 2005, the City=s Department of
Public Works and Engineering once again approved a permit authorizing
Candlelight to construct a bridge across the ditch.  Shortly thereafter, CCID,
a non-profit corporation organized to protect the homes and properties of
landowners in the vicinity of the proposed bridge, filed an application for
injunctive relief in the 281st District Court.  CCID alleged the permit issued
by the City is void because it was based on Asecret proceedings@ that violated
CCID members= rights to (1) federal due process under the federal
constitution; (2) due course of law under the state constitution; (3) the Open
Meetings Act; and (4) the Public Information Act.  CCID also sought injunctive
relief under section 1983 of the United States Code, chapter 42.[1]

The City again filed a plea to the jurisdiction alleging
CCID lacked standing to bring its claims, that CCID is essentially making
another inverse condemnation claim, and that its statutory claims lack merit. 
After a hearing, the trial court (1) denied CCID=s request for
injunctive relief and (2) granted the City=s plea to the
jurisdiction.  Because the determination of jurisdiction is our first duty, we
will address appellant=s points in reverse order.








Plea to the
Jurisdiction

In its plea to the jurisdiction, the City alleged it was
apparent from the pleadings that CCID lacked standing to sue.[2] 
For reasons other than those espoused by Candlelight in its plea to the
jurisdiction, we find CCID lacks standing to sue.[3]








The doctrine of standing identifies suits appropriate for
judicial determination.  Brown v. Todd, 53 S.W.3d 297, 305 (Tex. 2001). 
AThe general test
for standing in Texas requires that there >(a) shall be a
real controversy between the parties, which (b) will be actually determined by
the judicial declaration sought.=@  Tex. Ass=n of Bus. v. Tex.
Air Control Bd., 852 S.W.2d 440, 443B44 (Tex. 1993)
(quoting Bd. of Water Engineers v. City of San Antonio, 155 Tex. 111,
114, 283 S.W.2d 722, 724 (1955)).  Unless standing is conferred by statute, a
plaintiff must demonstrate that he Apossesses an
interest in a conflict distinct from that of the general public, such that the
defendant=s actions have caused the plaintiff some particular
injury.@  Williams v.
Lara, 52 S.W.3d 171, 178B79 (Tex. 2001); see also Hunt v. Bass,
664 S.W.2d 323, 324 (Tex. 1984) (stating that standing consists of some
interest peculiar to person as individual and not as member of general
public).  It is the plaintiff=s burden to allege facts affirmatively
demonstrating the trial court=s jurisdiction to hear the case.  Tex.
Ass=n of Bus., 852 S.W.2d at
445B46.  Standing is a
question of law subject to de novo review.  Mayhew v. Town of Sunnyvale,
964 S.W.2d 922, 928 (Tex. 1998).  As a component of subject matter
jurisdiction, standing is never presumed and cannot be waived.  Tex. Ass=n of Bus., 852 S.W.2d at
443B4.  We apply the
same standard of review to determine standing as we do to determine subject
matter jurisdiction generally.  Id. at 446.  Here, we construe the
petition in favor of CCID and review the entire record to determine whether any
evidence supports standing.  Id.

CCID is a Texas
non-profit corporation and its president, David Eng, lives on Rosslyn Road. 
The record contains ten documents assigning to CCID:

all causes of
action which are, or may be, necessary to prevent, or recover compensation for,
damage to [the homeowner=s property] occasioned by reason of the
actual or possible construction of the proposed bridge in the 4400 to 4600
block of Rosslyn Road, and the associated modifications of Rosslyn Road.

The
assignments were executed by property owners who live Afrom directly on
the 4400 block of Rosslyn Road, [David Eng] and those neighbors, as well as to
the intersection of Bethlehem and Rosslyn and to even flanking streets.@[4]

The City argues the trial court has no subject matter
jurisdiction because CCID=s real claim is an unconstitutional Ataking@ of property which
must be heard in the county civil court at law.  CCID strenuously denies this
assertion, stating it seeks no damages or compensation for the alleged
violation of its members= rights as property owners.  However, CCID=s petition speaks
in terms of protecting Aproperty interests,@ the Adeprivation of
homeowner rights,@ Airreparable harm
to the properties,@ Aaffecting the
property values of the homes in the vicinity,@ and preventing Apermanent adverse
consequences to the property owners.@  CCID concedes
that property owners in the vicinity of the proposed bridge will suffer no compensable
injury by its construction.  However, CCID claims it was entitled to injunctive
relief because (1) property rights will be adversely affected by construction
of the bridge, (2) property owners were irreparably harmed by the City=s denial of due
process, and (3) property owners have no adequate remedy at law.








Rights, constitutional and otherwise, do not exist in a
vacuum.  Wilson v. Taylor,  658 F.2d 1021, 1032 (5th Cir. 1981).  The
Due Process Clause is only activated when there is some substantial liberty or
property interest which is deserving of procedural protections.  Roane v.
Callisburg Indep. Sch. Dist., 511 F.2d 633, 637 (5th Cir. 1975).  By its
terms, the Due Process Clause safeguards Alife, liberty, or
property.@  Id. at 637B38.  To have a
property interest, a person must have more than an abstract need or desire for
it.  Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577
(1972).  Further, he must have more than a unilateral expectation of it.  Id. 
He must, instead, have a legitimate claim of entitlement to it.  Id. 

CCID offered evidence that property values on Rosslyn Road
will be diminished by construction of the bridge.  CCID also offered testimony
that property owners will be inconvenienced by the bridge and might have to
take a circuitous route in and out of their respective driveways.  Finally,
CCID offered evidence that the approach to the bridge will be unsafe because
the lanes narrow too quickly.

All enhancements, whether public or private, are rarely
achieved without some inconvenience.  If the public authorities could never build,
repair, enhance, or alter a street or highway without consulting all Aaffected@ property owners,
permitting them to alter the design of the project, or paying all persons along
such thoroughfares for the inconvenience and disruption occasioned by the
construction, no public improvements would ever be made.  Streets and highways
are primarily for the benefit of the traveling public, and only incidentally
for the benefit of property owners along its way.  State Highway Comm=n v. Humphreys, 58 S.W.2d 144,
145 (Tex. Civ. App.CSan Antonio 1933, writ ref=d).  Thus, a
landowner suffers no compensable injury where the government has not physically
appropriated, denied access to, or otherwise directly restricted the use of the
landowner=s property.  Westgate, Ltd. v. State, 843
S.W.2d 448, 450 (Tex. 1992).








Here, there is no evidence that the bridge will be
constructed on the land of any private person; that any property owner will be
denied access to his property; or that any property owner will be restricted in
the use of his property.  It may well be that property owners along Rosslyn
Road will suffer a diminution in the value of their property due to increased
traffic, noise, et cetera.  However, it is well established that A>The benefits which
come and go from the changing currents of travel are not matters in respect to
which any individual has any vested right against the judgment of the public
authorities.=@  Humphreys, 58 S.W.2d at 145 (quoting
Heller v. Atchison, T. & S.F.R. Co., 28 Kan. 625 (1882)).  Thus,
recovery is not permitted if the injury is one suffered by the community in
general.  Felts v. Harris County, 915 S.W.2d 482, 484 (Tex. 1996). 
Community injuries include highway traffic noise, dust, traffic hazards, and
circuitous routes; injuries such as these are not compensable.  Id. at
485.  Periodic street improvements are simply an incident of city life and must
be endured.  The law gives the adjacent property owner no right to relief,
recognizing that he recoups his damage in the benefit which he shares with the
general public in the ultimate improvement which is being made.  L‑M‑S
Inc. v. Blackwell, 149 Tex. 348, 233 S.W.2d 286, 289 (1950).

CCID concedes that the property owners have no compensable
damages, but nevertheless insists that because some ephemeral, non-compensable,
previously unrecognized property interest will be Aaffected@ by the
construction, state and federal due process protections come into play, and an
injunction is necessary.








We are unaware of any cognizable property interest that
might be impacted by the City other than an unconstitutional taking of property
prohibited by article I, section 17 of the Texas Constitution.  CCID has
consistently denied that its claim is a takings claim.[5] 
Therefore, CCID has failed to show any particular injury on which to sue. 
After fully reviewing the record, and after construing the petition in favor of
CCID, we find CCID lacks standing to sue.  We overrule CCID=s second point of
error in part, to the extent it is based on federal and state due process and
any related attempt to obtain a declaratory judgment or injunctive relief for
want of subject matter jurisdiction.  Because a claim (a) shall be a real
controversy between the parties, which (b) will be actually determined by the
judicial declaration sought, we find CCID lacks standing to bring a claim for
injunctive relief.  Accordingly, we overrule CCID=s second issue on
appeal.

Open Meetings and Public Information Acts

CCID also petitioned the trial court for relief under the
Texas Open Meetings and Public Information Acts.  See Tex. Gov=t Code Ann. ' 551.002 (Vernon
2004) (requiring every regular, special, or called meeting of a governmental
body to be open to the public);  Tex.
Gov=t Code Ann. ' 552.001 (Vernon 2004) (stating public
policy mandates that Aeach person is entitled, unless otherwise
expressly provided by law, at all times to complete information about the
affairs of government and the official acts of public officials and employees.@).  Each of these
statutes confers standing to CCID.  See id. at ' 552.001 (giving Aeach person@ the right to
complete information about most governmental affairs); Burks v. Yarbrough,
157 S.W.3d 876, 880 (Tex. App.CHouston [14th Dist.] 2005, no pet.)
(interpreting the Open Meetings Act broadly to confer standing on any member of
the interested public).

In one order, and without stating its reasoning, the trial
court granted the City=s plea to the jurisdiction and denied CCID=s request for
injunctive relief.








Whether a plaintiff has alleged facts affirmatively
demonstrating a trial court=s subject matter jurisdiction is a
question of law we review de novo.  Bland Indep. Sch. Dist. v. Blue, 34
S.W.3d 547, 554 (Tex. 2000).  We construe the pleadings liberally in favor of
the plaintiffs, looking to their intent.  Lacy v. Bassett, 132 S.W.3d
119, 122 (Tex. App.CHouston [14th Dist.] 2004, no pet.).  If
the pleadings do not contain sufficient facts to affirmatively demonstrate the
trial court=s jurisdiction, but also do not affirmatively
demonstrate incurable defects in jurisdiction, the plaintiff should be allowed
an opportunity to amend.  Id.  A plea to the jurisdiction may be granted
without allowing any opportunity to amend if the pleadings affirmatively negate
the existence of jurisdiction.  Id.  To prevail, the defense must show
that, even if all allegations in plaintiff=s pleadings are
true, there remains an incurable jurisdictional defect on the face of the
pleadings that deprives the trial court of subject matter jurisdiction.  Brenham
Hous. Auth. v. Davies, 158 S.W.3d 53, 56 (Tex. App.CHouston [14th
Dist.] 2005, no pet.).

In its plea to the jurisdiction, the City argued that CCID
did not make valid open records or open meetings claims to confer
jurisdiction.  Regarding the open meetings claim, the City argued its
permitting process does not involve a Agovernmental body@ as defined by the
Act.  This argument attacks CCID=s right of
recovery under the statute and should have more properly been made in a motion
for summary judgment; it does not attack the trial court=s subject matter
jurisdiction.  See Dubai Petroleum Co. v. Kazi, 12 S.W.3d 71, 76B77 (Tex. 2000)
(quoting 21 C.J.S. Courts ' 16 at 23 (1990))
(A>The right of a
plaintiff to maintain a suit, while frequently treated as going to the question
of jurisdiction, has been said to go in reality to the right of the plaintiff
to relief rather than to the jurisdiction of the court to afford it.=@).  Regarding the
open records claim, the City argued CCID did not allege it had submitted a
written request for information, that it lacks standing because CCID was not a Arequestor@ as defined by the
Act, or that the appropriate remedy is an action for mandamus.  The failure to
comply in all respects with statutory requirements may defeat a claimant=s right to relief
but, again, it does not deprive the trial court of subject matter
jurisdiction.  Id.  We make no judgment regarding the merits of these
claims or their likely success if and when they are presented in a motion for
summary judgment.  However, it was error to dispose of CCID=s Open Meetings
Act and Public Information Act claims in a plea to the jurisdiction.  Appellant=s first issue for
review is sustained.

Accordingly, we affirm in part, reverse in part, and remand
to the trial court for further proceedings in accordance with this opinion.

 

 

/s/      J. Harvey Hudson

Justice

 

Judgment rendered
and Opinion filed September 26, 2006.

Panel consists of
Justices Hudson, Fowler, and Seymore.









[1]  CCID also sought, under the Texas Uniform
Declaratory Judgments Act, an order declaring that the City was violating
public rights conferred by the state and federal constitutions.





[2]  The City also argued thatCto the extent CCID asserted a takings claimCthe district court lacks jurisdiction; CCID=s argument it has a due process right to participate
in the City=s permitting process is Abaseless@; CCID has not stated valid open records or meetings
claims to confer jurisdiction; CCID sought a declaratory judgment solely to
recover attorney=s fees; and CCID lacks standing because
particularized, individual proof of money damages for any alleged negative
impact on property values is necessary.





[3]  The City contends CCID lacks standing and cites the
test for associational standing.  However, the record reveals that CCID
received assignments from various property owners in the vicinity of the
proposed Rosslyn Road bridge, and it brings this action in its own capacity,
based upon those assignments.  Because we find CCID lacks standing on grounds
not argued by the City, we use the standard of review mandated when appellate
courts review standing sua sponte.





[4]  Taken from the testimony of David Eng at the hearing
on CCID=s motion for temporary injunction.





[5]  We agree with the City=s contention that, notwithstanding CCID=s elaborate attempt to circumvent the exclusive jurisdiction of the
county court, this suit is, in reality, based upon a disguised claim of inverse
condemnation.  Exclusive jurisdiction in inverse condemnation claims is vested
with the Harris County Civil Courts at Law, pursuant to section 25.1032(c) of
the Government Code.  Kerr v. Harris County, 177 S.W.3d 290, 294
(Tex. App.CHouston [1st Dist.] 2005, no pet.).